# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

PAMELA WEAVER, o/b/o
TREYVON HARVEY,

             **Plaintiff,**

-vs-                                                                 Case No.  6:04-cv-161-Orl-JGG

JO ANNE B. BARNHART,
Commissioner of  Social Security,

             **Defendant.**

_____/

## MEMORANDUM OF DECISION

    Plaintiff Pamela Weaver ["Weaver"] o/b/o Treyvon Harvey ["Harvey"] appeals to the

district court from a final decision of the Commissioner of Social Security [the "Commissioner"]

denying her application for a period of disability and disability insurance benefits.  *See* Docket No.

1 (complaint).  For the reasons set forth below, the Commissioner's decision should be

**REMANDED**.

## I.    PROCEDURAL HISTORY

    On January 25, 2001, Weaver filed an application for Supplemental Security Income

("SSI") on behalf of her son, Treyvon Harvey.  R. 54 - 55.  The application was denied

initially and upon reconsideration.  On November 20, 2002, the Honorable John D. Henson,

Administrative Law Judge ("ALJ"), held a very brief hearing on the claim.  R. 201 - 08 (seven-

and-one-half transcribed pages).  Weaver was not represented by counsel at the hearing.

-1-

On December 19, 2002, the ALJ issued a decision finding that Harvey was not disabled. R. 20 - 31.  Weaver requested a review of the hearing decision on February 21, 2003, R. 14 - 15, but on December 9, 2003, the Appeals Council found no basis for overturning the decision of the ALJ, R. 4 - 5.

On February 6, 2004, Weaver sought review from the United States District Court for the Middle District of Florida.  Docket No. 1.  On September 16, 2004, Weaver filed a memorandum of law in opposition to the Commissioner's decision.  Docket No. 24.  On November 15, 2004, the Commissioner filed a memorandum in support of her decision.  Docket No. 24.  The appeal is ripe for determination.

## II.   THE PARTIES' POSITIONS

Weaver contends 1.) that the ALJ did not obtain an adequate waiver of her statutory right to be represented by counsel at the hearing and 2.) that the ALJ failed to properly develop the record, particularly in regard to her son's hospitalizations.  The Commissioner responds that Weaver received proper notice of her right to representation such that her waiver was adequate, and that there is no evidence that Harvey was prejudiced by any failure to develop the record.

## III.   THE STANDARD OF REVIEW

### A.   Affirmance

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v.*

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

**B.    Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner

-3-

has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council);

*Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405 (g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92;  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.  With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact.  *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1]  *Id.*

---

[1]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six.  *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text.  In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction.  *Id.*  In a sentence-six remand, the time runs from the post-remand entry-of-judgment
(continued...)

C.       **Standard of Review for Evidence Evaluated by Appeals Council**

After the ALJ's decision — but before the Appeals Council decision — Weaver submitted additional medical records dating from October 30, 2002 through September 9, 2003.  R. 114 - 95. The Appeals Council properly made them a part of the record, and also considered them in denying review.  R. 4 - 7.  The district court also must consider the new evidence in determining whether the Commissioner erred in denying review of the ALJ's decision.

Congress left the term "final decision" undefined in 42 U.S.C. § 405 (g).  Where a claimant exhausts his administrative remedies by requesting review by the Appeals Council and the Appeals Council then denies review,  the Appeals Council's order denying review is a "final decision" of the Commissioner under § 405 (g).  *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2083 (2000); *accord Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Appeals Council "will" review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law, or if the ALJ's action, findings, or conclusions are not supported by substantial evidence.  20 C.F.R. § 416.1470; *Sims*, 120 S.Ct. at 2086; *see also, Parker v. Bowen*, 788 F.2d 1512, 1518 (11th Cir. 1986) (en banc).  The Appeals Council's denial of review is subject to judicial review to determine if it is supported by substantial evidence. *Sims*, 120 S.Ct. at 2086.

Just as the ALJ has a duty to investigate the facts and to develop the arguments both for and against the granting of benefits, the Appeals Council's  review is similarly broad.  *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2085 (2000).  The Appeals Council, not the claimant, has the

---

[1](...continued)
date in the district court. *Id.*

-6-

primary responsibility for identifying and developing the issues.  *Sims*, 120 S.Ct. at 2086.  When

the Appeals Council refuses to consider new evidence submitted to it and denies review, the

Appeals Council's decision denying review is subject to judicial review.  20 C.F.R. § § 404.970

(b); 416.1470 (b);  *Sims*, 120 S.Ct. at 2086;  *Keeton v. Department of Health and Human Services*,

21 F.3d 1064, 1066 (11th Cir. 1994).  Furthermore, the Appeals Council commits reversible error

when it refuses to consider new evidence and then denies review.  *Keeton*, 21 F.3d at 1066.

Similarly, it is reversible error for a district court to consider only the evidence presented to the

ALJ — and to ignore the new evidence presented to the Appeals Council — in reviewing a

decision of the Appeals Council.  *Keeton*, 21 F.3d at 1066.

     The Appeals Council must consider and evaluate new evidence to determine whether there

is a basis for changing the ALJ's decision.  *Sims*, 120 S.Ct. at 2086;  *Falge v. Apfel*, 150 F.3d

1320, 1322 n. 4 (11th Cir. 1998).  When the Appeals Council has denied review, the district court

looks only to the evidence actually presented to the ALJ in determining whether the *ALJ's decision*

is supported by substantial evidence.  *Falge*, 150 F.3d at 1323; *accord, Eads v. Secretary of Health

and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993) (ALJ cannot be faulted for failure to

weigh evidence never presented to him).  Nevertheless, there is an important difference between

*Falge* and this case — a difference stressed by the United States Court of Appeals for the

Eleventh Circuit.  In *Falge*, the claimant did not appeal the Appeals Council's decision to deny

review.  Instead he appealed only the *ALJ's decision* to deny benefits.  150 F.3d at 1324.  In this

case, however, the claimant does expressly appeal and seek a reversal of the Appeals Council's

decision to deny review.  Docket No. 1 at 1.  The Eleventh Circuit directs the district courts to

consider evidence submitted to the Appeals Council in reviewing the Appeals Council's denial of review. *Falge*, 150 F.3d at 1324; *Keeton*, 21 F.3d at 1066.

Indeed, it makes sense that Congress has provided for judicial review of the Commissioner's final decision — the last step of review necessary to exhaust administrative remedies. When the Appeals Council refuses to consider new evidence submitted to it, the Appeals Council's decision denying review is subject to judicial review for error. *Sims*, 120 S.Ct. at 2086; *Keeton*, 21 F.3d at 1066. Similarly, when the Appeals Council denies review of an ALJ's decision after receiving, considering, and evaluating new and material evidence that clearly and thoroughly undermines the ALJ's findings of fact and conclusions of law, the Appeals Council's decision denying review also must be subject to judicial review for error. *See Falge*, 150 F.3d at 1324; *Keeton*, 21 F.3d at 1066, 1068; 20 C.F.R. § 404.970 (b) (Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the relevant period, and it will then review the case if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record). The Commissioner would not avoid judicial review of the Appeals Council's decision to deny review by considering but not acting on new evidence that is highly probative of disability, or by considering but not acting on evidence that shows in retrospect that an ALJ's action, findings, or conclusion are contrary to the weight of the evidence currently of record.

In this case, the claimant has appealed an unfavorable decision to the Appeals Council as a necessary step in exhausting administrative remedies. The Appeals Council has considered claimant's additional evidence in light of the issues raised in the request for review, has considered

the applicable statutes and regulations, has considered the ALJ's decision, and has issued a written final decision determining that the ALJ neither erred nor abused his discretion, and determining that the ALJ's findings are supported by substantial evidence.  The Appeals Council's determination is subject to judicial review.  The Commissioner cannot avoid judicial review of the Appeals Council's final decision by passing a regulation defining the term "final decision of the Commissioner of Social Security" in 42 U.S.C. § 405 (g) as the decision of the ALJ, and by calling the Appeals Council's final decision a "denial of review."  *See Sims*, 120 S.Ct. at 2086;  *accord Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (Appeals Council's denial of review was a judicially reviewable final decision under 42 U.S.C. § 405 (g)).

## IV.  THE LAW

### A.  The Old "Comparable Severity" Standard for Childhood Disability

Before 1990, a child was "disabled" if he suffered from any medically determinable physical or mental impairment of "comparable severity" to an impairment that would prevent an adult from working.  42 U.S.C. § 1382c (a)(3)(1982).  On February 20, 1990, the United States Supreme Court decided *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The Supreme Court determined that the Commissioner's childhood SSI disability regulations and rulings had failed to implement the SSI statute enacted by Congress.  The regulations were manifestly contrary to the statute, and exceeded the Commissioner's statutory authority.  493 U.S. at 541.

The Supreme Court  rejected the Commissioner's argument that a functional analysis of childhood disability was not feasible, and that a "listings-only" approach to childhood disability was the only practicable way to determine whether a child's impairment was "comparable."  493

U.S. at 539 - 40.  After *Zebley*, the Commissioner "substantially liberalized" the childhood SSI

eligibility regulations to provide for an individualized functional analysis.  *See* S. REP. NO. 104-96,

104th Cong., 1st Sess. 1995 (available on Westlaw at 1995 WL 351655).

    **B.**    **The New "Functional Limitations" Standard for Childhood Disability**

        **1.**    **The New Act and Statute**

On August 22, 1996, the President signed into law the Personal Responsibility and Work

Opportunity Reconciliation Act, Pub.L. No. 104-193, 110 Stat. 2105.  The Act amended the

substantive standard for evaluating children's disability claims to read as follows:

> An individual under the age of 18 shall be considered disabled for the purposes of
> this subchapter if that individual has a medically determinable physical or mental
> impairment, **which results in marked and severe functional limitations**, and
> which can be expected to result in death or which has lasted or can be expected to
> last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c (a)(3)(C)(codification of the Act)(emphasis supplied).  A "physical or mental

impairment" is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques."  42 U.S.C. § 1382c (a)(3)(D).  The statute does not define "marked and severe

functional limitations."

In determining the severity of impairments, the Commissioner must consider the combined

effect and combined impact of all of the individual's impairments.  42 U.S.C. § 1382c (a)(3)(G).

In determining the disability of a child, the Commissioner must make reasonable efforts to ensure

that a qualified pediatrician or other specialist evaluates the case.  42 U.S.C. § 1382c (a)(3)(i).

### 2.     The New Regulations

Under express statutory authority, 42 U.S.C. § 405 (a), the Commissioner promulgates regulations governing eligibility for SSI benefits.  20 C.F.R. Part 416, Subpart I;  *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The new regulations are codified at  20 C.F.R. §§ 416.902; 416.906; 416.924 through 416.926a.[2]

The regulations define the statutory term "marked and severe functional limitations" for children as "a level of severity that meets or medically or functionally equals the severity of a listing in the Listing of Impairments in appendix 1 of subpart P of part 404 (the Listing)."  20 C.F.R. §§ 416.902; *see also* 416.906; 416.924 through 416.926a.[3]  The regulations set forth the steps now used in determining disability for children.  20 C.F.R. § 416.924 (effective April 14, 1997):

> We follow a set order to determine whether you are disabled.  If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further.  If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe.  If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further.  If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals in severity any impairment that is listed in appendix 1 of subpart P of part 404 of this chapter.  If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled.  If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. § 416.924 (a).

_____

[2]The superseded text of all regulations appears in 20 C.F.R. following the revised text.

[3]Part B provides medical criteria applicable to children in those instances in which Part A does not give appropriate consideration to the particular disease process in childhood.  *See* Parts A and B, Part 404, Subpart P, App. 1.

Individualized functional assessments for children have been eliminated. *See* Pub. L. 104-193, 1996 H.R. 3734, 110 Stat. 2105, 2189;  20 C.F.R. §§ 416.924d and 416.924e (discontinued). The Commissioner now applies a three-part test in determining a child's disability.  The first determination is whether the child is working and performing substantial gainful activity.  20 C.F.R. § 416.924 (b).  If the child is not working, the Commissioner determines whether the child suffers from a severe impairment or combination of impairments.  20 C.F.R. § 416.924 (c).  If the child suffers from a severe impairment or combination of impairments, the Commissioner then determines whether the child's impairments meet, medically equal, or functionally equal an impairment listed under Appendix I to Subpart P of Part 404.  20 C.F.R. § 416.924 (d).  The Commissioner evaluates age, functioning, and other factors in determining whether a child meets a listing.  20 C.F.R. §§ 416.924a - 416.924c.  Provisions for medical equivalence are established in 20 C.F.R. § 416.926.

Provisions for functional equivalence are established in 20 C.F.R. § 416.926a.  Stated generally, to functionally equal a listed impairment, a child must demonstrate one "extreme" limitation in one area of functioning, or show "marked" limitation in two areas of functioning.  20 C.F.R. § 416.926a (b). There are six areas of functioning to be considered:  cognition / communication ability;  motor ability;  social ability;  responsiveness to stimuli (birth to age one only);  personal ability (age three to age eighteen only);  and concentration, persistence, or pace (age three to age eighteen only).  20 C.F.R. § 416.926a (c)(4).

**C.      Treating Physicians**

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v.* Callahan, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*,  955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527 (d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527 (d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other

factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527 (d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527 (e).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner.  20 C.F.R. § 404.1527 (e).

### D.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to

a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v.*

*Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to

"scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and

to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances

are elicited."  *Cowart*, 662 F.2d at 735 (citations omitted).

### E.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's

medical sources do not give sufficient medical evidence about an impairment to determine

whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowmen*, 781 F.2d 143,

146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required

to order a consultative examination unless the record establishes that such an examination is

necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206,

1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order

such an evaluation may be reversible error).  Under the regulations, however, the ALJ may

determine that a consultative examination or other medical tests are necessary.  20 C.F.R. §

416.917 (1998).

### F.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must

articulate specific and adequate reasons for doing so, or the record must be obvious as to the

credibility finding.  *Foote*, 67 F.3d at 1561-62*; Jones v. Department of Health and Human*

*Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial

-15-

evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

## V.   APPLICATION AND ANALYSIS

### A.   The Facts

Harvey was born on March 17, 1996, and claimed disability as of September 2000.  R. 66, 75; *but c.f.* R. 201 (ALJ finds December 1, 2000).  On October 6, 2000 (when Harvey was four-and-one-half years old), Weaver sought treatment for Harvey at Halifax Health Center due to cold symptoms and wheezing accompanied by shortness of breath, which was relieved after albuterol treatments.  The assessment was bronchitis and possible asthma.  R. 105.  He returned on

November 2, 2000 due to a worsening of his condition.  R. 104.  On February 28, 2001, an

examiner at Halifax Keech Health Center noted that Harvey was wheezing often.  R. 103.

On March 24, 2001, Harvey went to the Halifax Medical Center due to complaints of

wheezing and upper respiratory symptoms.  The diagnosis was asthma flare up and upper

respiratory tract infection.  R. 86 - 87.  On May 17, 2001, Weaver took Harvey to Halifax Health

Center due to right ear pain and wheezing.  The examiner noted yellowish drainage from Weaver's

right ear.  R. 102.

On October 30, 2002, Harvey was seen at Halifax Keech Health Center for follow-up

regarding his asthma.  The impression was reactive airway disease.  R. 119.  On November 19,

2002, Harvey was admitted to Halifax Medical Center because of wheezing and shortness of

breath.  He had been treated earlier that day at the emergency room with albuterol and Atrovent

nebulizer and had been discharged on Prelone.  After going home, he continued wheezing and was

brought back to the hospital.  On admission, his lungs showed diffuse wheezing in both lungs with

poor to fair air movement.  R. 179 - 83.

On November 19, 2002, Harvey was hospitalized through the Emergency Room at the

Halifax Medical Center in Daytona Beach due to wheezing, shortness of breath, and coughing.  He

was discharged three days later.  R. 179 - 95 (Appeals Council evidence).  At the hearing before

the ALJ on November 20, 2002, Weaver testified that Harvey was not present at the hearing

because he had just been admitted to the hospital, R. 205, and that he had been admitted to the

hospital "five or six times out [sic] the year."  R. 206.  In subsequent testimony, Weaver stated that

Harvey had been hospitalized "about four or five times out [sic] the year."  R. 207.  Weaver also

-17-

testified that the steroids Harvey took for his asthma caused behavioral changes, leading him to act "real bad" in school.  R. 206.

The ALJ issued his decision on December 19, 2002, finding that Harvey's asthma was his only impairment, and that it was severe.  R. 30, Finding 2.  The ALJ found that Harvey's impairment did not functionally equal the listings, R. 30, Finding 6, and that Harvey had not been disabled through the date of the decision.  R. 30, Finding 7.  The ALJ noted Weaver's testimony that Harvey had been hospitalized for his asthma, including five hospitalizations over the previous year.  R. 29.  Concluding that Weaver's testimony was not fully credible, R. 30, Finding 4, the ALJ determined that "there is indication of only one emergency room visit" over that period, and that Harvey had not required any hospitalizations.  R. 29.

Five months after the ALJ's decision, Harvey underwent evaluation at the Pediatric Pulmonary Clinic on May 5, 2003.  Albert Faro, M.D., described Harvey as "acutely ill" and noted that Harvey's asthma had been poorly controlled, requiring frequent nebulizer treatments and Solu-Medrol.  Dr. Faro's impression was of poorly controlled asthma.  Dr. Faro also suggested that other things such as gastroesophageal reflux or allergies might be exacerbating Harvey's asthma. R. 122 - 24.

On June 17, 2003, Harvey was admitted to Halifax Medical Center with complaints of acute asthma exacerbation.  R. 151 - 53.  After three albuterol treatments, Harvey continued breathing fast and wheezing.  He was given prednisone.  R. 154 - 55.  On August 4, 2003, Harvey returned to Halifax Medical Center after waking up short of breath.  Paramedics administered three albuterol treatments on the way to the hospital, significantly improving Harvey's air exchange.

X-rays showed mild perihilar prominence with no definite infiltrate.  Harvey appeared clinically

stable and was not admitted to the hospital.  R. 137 - 38.  September 9, 2003, a Pulmonary

Function Test revealed mild obstruction.  R. 125.

### B.    The Analysis

Weaver argues that the ALJ did not properly obtain her waiver of her right to be

represented by counsel.  Docket No. 24 at 3.  Claimants have a statutory right to counsel.  *Smith v.*

*Shweiker*, 677 F.2d 826, 828 (11th 1982).  They may waive this right, but they cannot knowingly

and intelligently do so unless they have been adequately informed of that right either in an

adequate prehearing notice or at the hearing.  *Id.*  A prehearing notice that does not inform the

claimant of the possibility of retaining free counsel or of the limitation on attorney fees to one-

quarter of any eventual award does not fully inform the claimant of his or her rights and cannot

serve as the basis for a knowing, intelligent waiver.  *Id.* at 829.  In *Clark v. Shweiker*, 652 F.2d

399, 403 (5th Cir. 1981), the United States Court of Appeals for the Fifth Circuit[4] found a

prehearing notice inadequate to permit a knowing waiver and stated:

> It seems clear that the natural assumption from this notice is that any representative
> whom the claimant may seek will have the right to demand a fee for these services.
> Moreover, this notice lacks very important information that in no event could such a
> fee exceed 25% of the recovery for amounts due up to the date of the award.

The Commissioner contends that, before waiving her right to counsel at the November 20,

2002 hearing, Weaver received several pre-hearing notices that adequately informed her of that

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981), the United States Court of Appeals for the
Eleventh Circuit adopted as binding precedent all decisions of the United States Court of Appeals for the Fifth Circuit
handed down prior to the close of business on September 30, 1981.  The *Clark* decision was handed down on July 17,
1981.

right.[5]  The Commissioner sent Weaver an initial notice of the determination that Harvey was not

disabled dated May 17, 2001.  The notice contained the following language:

> You can have a friend, lawyer, or someone else help you.  There are groups that can
> help you find a lawyer or give you free legal services if you qualify.  There are also
> lawyers who do not charge unless you win your appeal. . . .
>
> If you get someone to help you, you should let us know.  If you hire someone, we
> must approve the fee before he or she can collect it.

R. 51.  After reconsideration, the Commissioner sent Weaver another notice, this one dated

October 8, 2001.  The notice included the same language quoted above.  R. 47.  A third notice, a

notice of hearing sent October 23, 2002, Weaver informed Weaver that she could have someone

represent her.  R. 40.

> At the hearing on November 20, 2002, the ALJ told Weaver:
>
> I also need to advise you that you do have a right to have an attorney or someone as
> [sic] represent you.  That is not required under the law, but you do have that right.
> If you wish to proceed with your hearing unrepresented, you can waive that right
> and proceed this morning.  So at this time, I wish to know; what do you wish to do
> concerning a representative?

R. 202.  Weaver responded "[INAUDIBLE] do it myself."  R. 202.  When the ALJ said "Pardon?",

Weaver responded "I guess I'm alone."  R. 202.  As the ALJ continued to ask whether she

intended to waive her right to representation, she interrupted him to say "yes."  R. 202.

Taken together, these notices seem to provide a sufficient basis for finding that Weaver

knowingly and intelligently waived her right to representation.  R. 202.  However, none of the

notices informed Weaver that a retained attorney would be limited to a fee not exceeding one-

---

[5] Weaver reads and speaks English.  R. 74, 201.

quarter of Harvey's past-due benefits — a point the Commissioner concedes.  Docket No.25 at 6.

Neither did the ALJ orally inform Weaver of the fee limits before she waived her right to counsel.

R. 202.  The Court is therefore constrained by *Smith* and *Clark* to find that Weaver did not

knowingly and intelligently waiver her right to representation in this case.

Because Weaver did not adequately waive the right to counsel, the ALJ's obligation to

develop a full and fair record rose to a special duty.  The ALJ's duty was to "scrupulously and

conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially

diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."

*Cowart*, 662 F.2d at 735 (citations omitted).  The Appeals Council had a similar obligation in this

case.  *See Sims v. Apfel*, 530 U.S. 103, 110 - 11 (2000) ("Social Security proceedings are

inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the

arguments both for and against granting benefits, and the Council's review is similarly broad").

Weaver is correct that the Commissioner's inquiry into facts favorable to Weaver failed to meet

the higher standard, resulting in prejudice to Harvey.  Indeed, the Commissioner's inquiry fell

short of even the normal standard —  so the waiver issue has no effect.  Remand is required in any

event.

At the November 20, 2002 hearing, Weaver testified that Harvey was not present because

he had been admitted to the hospital, and that he had been admitted to the hospital "five or six

times" over the previous year.  R. 205 - 06.  The ALJ found that Harvey's asthma was not severe

enough to be disabling, in large part because the record did not show that he had ever been

hospitalized:

> The medical evidence indicates that the claimant has been treated for flare-ups for his asthma on a couple of occasions.  However, the record indicates he had good response to treatment on these few occasions.  *He has not required any hospitalizations.*  The mother testified at the hearing that the claimant was in the hospital, however, there had been no prior hospitalizations for his asthma.  The mother testified that the claimant was at the hospital five times over the last year.  However, there is indication of only one emergency room visit.

R. 29 (emphasis added).  Despite the ALJ's recognition of the relevance of hospital records (or the lack of such records) to the determination of Harvey's disability and to Weaver's credibility,[6] the record indicates no attempt to obtain such records.[7]  The Commissioner does not argue that the ALJ ever did.

 Rather, the Commissioner argues that Weaver's testimony, standing alone, cannot demonstrate an evidentiary gap in the record requiring remand.  The Commissioner further argues that Weaver's subsequent failure to submit records of the hospitalizations compels the Court to conclude that no such hospitalizations occurred  — and compels the Court to deny remand.  Docket No. 34 at 7 - 9.  But Weaver *did* submit to the Appeals Council records of Harvey's three-day hospitalization beginning November 19, 2002 — the day before the ALJ's hearing.  R. 179 - 95.  These records corroborated Weaver's testimony (which the ALJ found to lack credibility due to a lack of corroboration) and directly contradicted the ALJ's determination that Harvey never required hospitalization.  R. 29.  The ALJ failed to fulfill his duty to develop the record.  He was

---

[6]The ALJ found Weaver's testimony was not fully credible solely because of the absence of medical records confirming her testimony about her son's hospitalizations and about the side effects of his medications.  R. 29 - 30.  The ALJ, however, never even ordered those records.  Rather, he assumed that they did not exist.  The lack of a sufficiently explicit credibility finding as to  Weaver's credibility would itself become a ground for remand because Weaver's credibility is critical to the outcome of this case.  The law required the ALJ to either explicitly discredit Weaver's testimony, or to imply reasons that are so clear as to amount to a specific credibility finding.

[7]At an April 2005 seminar hosted by the Federal Judicial Center, a former ALJ reported that the Commissioner now expects each ALJ to hear and determine 45 cases per month —  a staggering number.

hardly diligent in eliciting the facts concerning Harvey's hospitalizations.  This failure clearly prejudiced Harvey, as the absence of the records led the ALJ to negative conclusions about Harvey's disability and Weaver's credibility.  Remand is required to allow the ALJ to fully develop the record, particularly in regard to Harvey's hospitalizations, and to allow the ALJ to reassess his conclusions in light of this augmented record.

**VI.** **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **REMANDED** to the Commissioner under Sentence Four.  The Clerk shall enter a judgment.

**DONE AND ORDERED** this 23rd day of May, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL                 33602

The Honorable John D. Henson
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL            32817